UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SETH A. BARNHART, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00052-SNLJ |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

On April 22, 2022, Petitioner Seth A. Barnhart ("Barnhart") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Hudson's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Hudson's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

**I.   STATEMENT OF FACTS[1]**

On January 27, 2020, an officer with the Cape Girardeau, Missouri, Police Department responded to the Rhodes Travel Center on Nash Road in Cape Girardeau to speak with victim, A.N. The victim reported she and her sister-in-law, H.N., were involved in an assault that took place on South Kingshighway near the intersection of Interstate 55.

---

[1] This section is materially identical to the facts in the Final Presentence Investigation Report ("PSR"), which was adopted by the Court. *United States v. Barnhart*, Case No. 1:20-CR-00021-SNLJ ("Crim. Case"), Doc. 32 ¶¶ 15-19; Doc. 48 ("Sent. Tr.") at 37. While Barnhart objected to some of the facts contained in this section, after hearing evidence at sentencing, the Court resolved those objections in favor of the Government. *Id*.

1

Investigation revealed A.N. arrived at a Rhodes convenience store to meet H.N, but H.N. was not there. H.N. had previously contacted A.N. to advise she had been in a disagreement with Seth Barnhart and wanted A.N. to pick her up. H.N. had been involved in an intimate romantic relationship with Barnhart that had recently ended. A.N. attempted to contact H.N. via cellular telephone multiple times. After several attempts, Seth Barnhart answered the phone. When Barnhart answered the phone, H.N. could be heard in the background crying and screaming she wanted to leave. Barnhart stated she was not going anywhere and hung up. A.N. called back, and H.N. advised she was able to run away and was at the intersection of West End Boulevard and Independence. A.N. picked up H.N., but Barnhart began to follow them as they were leaving. Barnhart attempted to run A.N.'s vehicle off the road with his vehicle while traveling south on South Kingshighway. When Barnhart attempted to run her off of the road, A.N. slowed and stopped on the shoulder in order for Barnhart to pass by. Barnhart stopped, backed up, and struck the front of her vehicle. Barnhart then exited his vehicle and approached the passenger side of A.N.'s vehicle and began banging on the window. A.N. exited her vehicle at that time, and Barnhart opened the passenger door, grabbed H.N., and pulled her out of the vehicle by her legs. A.N. attempted to stop Barnhart to no avail. A.N. told Barnhart to leave H.N. alone and Barnhart then grabbed A.N. by the throat and threw her to the ground. A.N. got back up and told Barnhart to get in his car and leave. Barnhart then grabbed A.N. by the arms and pushed her. In order to protect herself, A.N. retrieved a knife and told Barnhart to leave. A.N. was then able to get H.N. back into her vehicle. As A.N. was attempting to enter her vehicle, Barnhart produced a firearm from the trunk of his vehicle and pointed it at both

A.N. and H.N. Barnhart threatened to kill A.N. and her children. A.N. then quickly drove toward the Scott City, Missouri, Police Department. Barnhart continued to follow A.N. to Scott City.

An officer with the Scott City Police Department was traveling on Main Street and observed two vehicles traveling at a high rate of speed. The officer turned around and accelerated to conduct a stop of the vehicles. Before catching up to the two vehicles, the officer observed the rear vehicle, a silver sedan, turn off on a side street while the front vehicle turned into the police department's parking lot. A female passenger quickly ran into the Scott City Police Department while the female driver appeared to be signaling for help by waiving her hands. While reporting the incident and assault at the police station, H.N. advised officers that Barnhart possessed a Glock .40 caliber pistol with a standard and extended magazine and a tan holster. An investigating officer observed redness of the skin to A.N.'s arms between the elbow and wrist of both arms.

Another officer with the Scott City Police Department located the silver sedan that had been pursuing the two females near the intersection of Ruth and Main Street and initiated a traffic stop. The driver, identified as Barnhart, was directed to exit the vehicle and was detained due to being the suspect involved in the assault of the two female victims and an incident involving a firearm. Upon contacting Barnhart, the officer noticed he had scratches on his nose, and his shirt was torn. Based on the nature of the report, the officer advised the defendant that he was going to secure him in handcuffs at that time. Barnhart physically resisted by jerking his hands away. After a short struggle, the defendant was secured. A search of the vehicle was subsequently conducted which located a .40 caliber

Glock semi- automatic pistol loaded with 13 rounds of ammunition and one round in the chamber under the driver's seat. A tan canvas holster and an extended .40 caliber magazine capable of accepting 28 rounds of ammunition were also located and seized.

On January 31, 2020, an ATF Special Agent examined the firearm and determined it to be a Glock, Model: 22, .40 caliber semi-automatic pistol manufactured in the country of Austria and had therefore affected foreign and interstate commerce prior to its discovery within the Eastern District of Missouri. The records do not reflect the status of the firearm as to whether or not it was listed as stolen. Prior to the events described above, Barnhart had sustained several felony convictions. Crim. Case, Doc. 32.

## II.     PROCEDURAL HISTORY

Based on those facts, a federal grand jury charged Barnhart with one count of possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Crim. Case, Doc. 2. Barnhart subsequently pleaded guilty to the charge. Crim. Case, Doc. 25. "[I]n exchange for [his] voluntary plea of guilty to the charge made in the indictment," the Government "agree[d] that no further federal prosecution will be brought in this District relative to [this conduct]." *Id*. at 1. Barnhart also "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding . . . except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id*. at 6. At his change of plea hearing, the Court ensured that Barnhart was competent and that his plea was voluntary, knowing, and supported by a factual basis. Plea Tr. at 2–13. The Court then accepted his guilty plea. *Id*. at 13.

On October 15, 2020, the Court sentenced Barnhart within the Guidelines range of

4

92-115 months imprisonment by imposing a 115-month sentence. Sent. Tr. at 42; Doc. 48. Barnhart appealed his conviction and sentence pro se and through the brief filed by his counsel under *Anders v. California*, 386 U.S. 738 (1967). *United States v. Barnhart*, No. 20-3221, (8th Cir. April 30, 2021) (per curiam). On his direct appeal, Barnhart claimed he was factually innocent and did not fully understand the charges, that his attorney was ineffective, and that the attorney for the government committed prosecutorial misconduct by not providing a witness list before sentencing. *Id*. He also challenged the substantive reasonableness of his sentence. *Id*. The Eighth Circuit declined to address Barnhart's ineffectiveness claim and rejected his other claims, affirming the judgment. *Id*. The Eighth Circuit also independently examined the record under *Penson v. Ohio*, 488 U.S. 75 (1988), and found no non-frivolous issues for appeal. *Id*. Barnhart timely filed this Motion to Vacate presenting four grounds for relief.

### III.   LEGAL STANDARD

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under Section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States.' (2) 'that the court was without jurisdiction to impose such sentence.' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to

collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d. 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)); *See also* R. GOVERNING § 2255 PROCEEDINGS 1.  The petitioner bears the burden of proof as to each asserted ground for relief.  *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For instance, "[a] district court need not hold an evidentiary hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States*, 905 F.2d 218, 221–22 (8th Cir. 1990) (citation omitted). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); see also *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

In the ineffective-assistance context, a court "must consider the validity of a petitioner's allegation of ineffective assistance of counsel" in light of the record to determine whether an evidentiary hearing is necessary. *Holder*, 721 F.3d at 994 (quotation and internal alterations omitted).

IV.     **DISCUSSION**

   A.  **Claims Alleging to Procedural Error in Calculating Criminal History Score**

In his first three grounds for relief, Barnhart alleges various errors in calculating his criminal history score. These claims fail because he waived his right to challenge the criminal history score in this post-conviction setting in his guilty plea agreement, he procedurally defaulted those claims by not raising them on direct appeal, and because he received a sentence authorized by statute, which precludes him from challenging his sentence in a § 2255 motion.

   **1.  Barnhart waived his right to challenge his criminal history score.**

Defendants can waive their right to seek collateral relief under § 2255. *Ackerland v. United States*, 633 F.3d 698, 701 (8th. Cir. 2011) (citing *Chesney v. United States*, 367 F.3d 1055, 1058 (8th Cir. 2004)). "Such a waiver is enforceable when the claim raised falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement and waiver, and enforcement of the waiver would not result in a miscarriage of justice." *Id.* (citing *United States v. Andis*, 333 F.3d 886, 889-90 (8th Cir. 2003) (en banc)).

Here, Barnhart's plea agreement and waiver are clear. In a section of his plea agreement titled "WAIVER OF APPEAL AND POST CONVICTION RIGHTS," Barnhart made the following agreement with the United States: "The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Crim. Case, Doc. 25 at 5-6.

7

The Court repeatedly ensured that Barnhart understood the plea agreement, that he had gone over it in detail with his attorney, and that he entered into the agreement voluntarily. Plea Tr. at 2–13. Attempting to violate his agreement with the United States, Barnhart now seeks to contest his sentence in this post-conviction proceeding. However, because Barnhart's first three claims fall within the scope of the waiver, and because he knowingly and voluntarily entered into the plea agreement and waiver, his first three grounds for relief will be denied. Denying these claims would not result in a miscarriage of justice as Barnhart was sentenced within the statutory and guidelines ranges. Denying the claims would promote judicial economy by speedily resolving frivolous claims.

### 2. Barnhart procedurally defaulted these claims by failing to raise them on direct appeal.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal citation omitted). Generally, claims not raised in the District Court or on direct appeal are waived. *United States v. Frady*, 456 U.S. 152 (1982); *Roundtree v. United States*, 885 F.3d 1095 (8th Cir. 2018). To raise the claims despite procedurally defaulting them, a movant most show both "cause" for failure to raise the issue during direct appeal, and "actual prejudice" resulting from the error or must be proceeding under the actual innocence exception. *See Bousley*, 523 U.S. at 622; *Frady*, 456 U.S. at 167-68.

Only now in this § 2255 motion does Barnhart take issue with his criminal history calculation, having never raised it in the District Court or on direct appeal. He does not even attempt to explain why, much less meet the heavy burden of showing cause and actual

prejudice. Mot. at 4-7. Accordingly, his claims will be denied as he has failed to overcome his procedural default.

### 3. Barnhart's sentence is not subject to challenge in this § 2255 setting.

Sentences that do not amount to a "miscarriage of justice" are not subject to challenge in a § 2255 motion. *Sun Bear*, 644 F.3d at 704 (quoting *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (other citations omitted)). Under *Sun Bear*, only unlawful or illegal sentences–sentences imposed without or in excess of statutory authority–are considered a "miscarriage of justice" and may be challenged in a § 2255 motion. *Sun Bear*, 644 F.3d at 705.

Here, the maximum punishment authorized by statute was 120 months. Barnhart received a sentence of 115 months. Because he received a sentence within the range authorized by statute his sentence does not amount to a "miscarriage of justice". Accordingly, his claims are foreclosed by Eighth Circuit precedent and will be denied.

### B. Claims Alleging Ineffective Assistance of Counsel

Barnhart's final ground for relief is his allegation that his counsel was constitutionally ineffective. Read generously, Barnhart's motion asserts three reasons his counsel was ineffective in his view: she failed to accurately predict his guideline sentencing range by not accurately calculating his total offense level and criminal history score, she purportedly harbored some secret bias against him after he allegedly informed her that he did not want her as his appeal counsel, and she failed to provide him with unspecified documents. Barnhart's claims are either foreclosed by Eighth Circuit precedent or are cast as mere conclusory allegations.

9

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). Ineffective-assistance claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted) (emphasis added). "Failure to satisfy either [the performance or prejudice] prong is fatal to the claim." *Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008) (citation omitted). Indeed, "[i]f the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

Under the performance prong, courts "apply an objective standard [to] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Nave*, 62 F.3d at 1035 (quotation omitted). In doing so, a court must be careful to "avoid the distorting effects of hindsight . . . by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (citation omitted). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citation omitted). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if those decisions prove unwise. *Strickland*, 466 U.S. at 690.

10

Under the prejudice prong, the petitioner must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill*, 474 U.S. at 59. "[I]f there is no reasonable probability that [a course of action] would have been successful, [the movant] cannot prove prejudice." *DeRoo*, 223 F.3d at 925.

**1. Ineffectiveness based on counsel's alleged failure to accurately predict the correct guidelines range**

Barnhart first complains that, due to his counsel's alleged failures to understand which enhancements would apply and what his criminal history score would be, he pleaded guilty under the impression that his guideline range of punishment would be 63-78 months, rather than the 92-115 months range used at sentencing. Mot. at 8. Even if Barnhart's allegations were true, he would still not be entitled to relief.

A defendant's § 2255 claim that his counsel was ineffective for failing to accurately predict the expected sentence does not provide for § 2255 relief. *United States v. Quiroga*, 554 F.3d 1150, 1155-56 (8th Cir. 2009) (discussing cases). Indeed, "inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *Id*. Barnhart's argument has been repeatedly raised in the Eighth Circuit, and the Circuit's precedent is clear:

> A defendant may not withdraw a plea . . . merely because he misunderstands how the sentencing guidelines will apply to his case. So long as the district

11

> court tells a defendant the statutory range of punishment that he faces and informs him that the sentencing guidelines will be used in determining the ultimate sentence, the plea is binding. This is true even where the misunderstanding is caused by defense counsel's erroneous estimation of what the ultimate sentence will be.

*United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006) (internal citation omitted); *see also United States v. Ludwig*, 972 F.2d 948, 949-51 (8th Cir. 1992) (holding that a failure to advise a defendant that the career offender provisions might apply did not provide a basis for plea withdrawal even though counsel calculated the likely guidelines range as 130-162 months and the actual career offender range was 210-262 months).

Here, the Court explained to Barnhart that the sentencing guidelines would be used in determining the ultimate sentence, and that the guidelines were only discretionary. Plea Tr. 9-10. The Court also explained the statutory range of punishment. Plea Tr. 10. The Court sentenced Barnhart within the statutory and guideline ranges of punishment. Accordingly, his ineffective assistance claim as to the calculation of his sentencing guideline range fails.

### 2.  Ineffectiveness based on counsel's alleged bias

Barnhart's next claim of ineffectiveness is that his counsel may have developed a bias against him after he allegedly told her that he no longer wanted her to serve as his attorney. Again, even if rue, Barnhart's claim would fail as he cannot prove either the deficient performance prong or the actual prejudice prong of the Strickland analysis.

First, it should be noted that claims raised by a movant must go beyond mere allegations and must not be so incredulous as to be unbelievable. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

12

dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *see also Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel); *United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance of counsel). Here, Barnhart's conclusory allegation that his counsel may have been biased against him is insufficient to rebut the presumption of competency granted to defense counsel.

The primary fact Barnhart relies on to demonstrate this bias is that his counsel filed an *Anders* brief on his behalf on direct appeal. However, the Eighth Circuit has recognized that filing a brief pursuant to *Anders*, rather than a normal brief, is not in itself ineffective. *United States v. Davis*, 508 F.3d 461 (8th Cir. 2007).

Perhaps the most significant indicator that Barnhart has completely failed to carry his burden of proving both deficient performance and actual prejudice is that the Eighth Circuit independently examined the record under *Penson v. Ohio*, 488 U.S. 75 (1988), a record which included Barnhart's pro se brief, and found no non-frivolous issues for appeal. *United States v. Barnhart*, No. 20-3221, (8th Cir. April 30, 2021) (per curiam).

### 3. Ineffectiveness based on the failure to provide documents

Finally, Barnhart argues that his counsel was ineffective because she failed to provide him with unspecified legal documents. Mot. at 8. Again, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."

13

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).

Barnhart does not even attempt to explain which documents were not provided or why failure to provide those particular documents should rise to the level of deficient performance under *Strickland*. Further, it is unclear how Barnhart could carry his burden of proving actual prejudice, given his demonstrated ability to successfully petition the court directly for documents he deemed necessary. Crim. Case Doc. 51.

In short, Barnhart has simply failed to carry his burden of proving ineffectiveness based on any claim presented.

## VI.   CONCLUSION

For the foregoing reasons, this Court will deny Barnhart's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Hudson has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 27th day of November, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE